William J. Edelman (SBN 285177)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (771) 474-1121
Email: wedelman@milberg.com

Heather Lopez (SBN 354022)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: hlopez@milberg.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
Yuanchen Lu (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER C. HAYWARD, KELLY GARCIA, and MATTHEW YBARRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MPARTICLE, INC. and ROKT US CORP.,<br><br>Defendants. | Case No. 3:25-cv-03551-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS MPARTICLE, INC. AND ROKT US CORP.'S MOTION TO TRANSFER VENUE OR DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: September 18, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Judge: Hon. James Donato |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 2
III. LEGAL STANDARD .......... 3
IV. ARGUMENT .......... 3
- A. The Northern District of California Is the Appropriate Venue .......... 3
- B. Plaintiffs' Privacy Claims Should Be Sustained .......... 6
- C. Plaintiffs' CIPA § 631 Claim Should Be Sustained .......... 9
- D. Plaintiffs' CIPA § 632 Claim Should Be Sustained .......... 10
- E. Plaintiffs' CIPA § 638.51 Claim Should Be Sustained .......... 11
- F. Plaintiffs' CDAFA Claim Should Be Sustained .......... 13
- G. Plaintiffs' Unjust Enrichment and Injunctive Relief Claims Should Be Sustained .......... 14

# TABLE OF AUTHORITIES

**CASE(S)** **PAGE(S)**

*Bales v. Sierra Trading Post, Inc.*,
No. 13CV1894, 2013 WL 6244529 (S.D. Cal. Dec. 3, 2013) .......... 10

*Bride v. Snap Inc.*,
No. 21-CV-03473-JD, 2021 WL 3493662 (N.D. Cal. Aug. 9, 2021).......... 6

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......... 15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 11, 14

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 14

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 9

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 12

*Continental Automotive Systems, Inc. v. Avanci, LLC*,
19-CV-02520-LHK, 2019 WL 6735604 (N.D. Cal. Dec. 11, 2019) .......... 6

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .......... 3, 5

*Doe v. Meta Platforms*, Inc.,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 14

*Erickson v. Pardus*,
551 U.S. 89 (2007).......... 3

*Florens Container v. Cho Yang Shipping*,
245 F. Supp. 2d 1086 (N.D. Cal. 2002) .......... 4

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025).......... 6

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533, 2025 WL 1939957 (N.D. Cal. July 14, 2025).......... 8, 12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023).......... 3, 4, 5, 6

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 7, 10, 11, 14

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025).......... 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 8

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 13

*Heiting v. FKA Distrib. Co.*,
No. 2:24-CV-07314, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 11

*Hendricks v. StarKist Co*.,
No. 13-CV-729 YGR, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) .......... 6

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 7

*Hubbard v. Google LLC,*
No. 19-CV-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024).......... 7, 8, 15

*I.C. v. Zynga, Inc.*,
600 F.Supp.3d 1034 (N.D. Cal. 2022) .......... 7

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7, 8, 9, 15

*In re Ford Tailgate Litig.*, No.11-CV-2953-RS,
2014 WL 1007066 (N.D. Cal. Mar. 12, 2014).......... 15

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 8

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 9

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 8, 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 8, 13

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) ........................................ 11

*In re Meta Pixel Tax Filing Cases*,
No. 22-CV-07557, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) ........................................ 11, 14

*Jones v. Peloton Interactive, Inc.*,
No. 23-CV-1082, 2024 WL 3315989 (S.D. Cal. July 5, 2024) ........................................ 10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................ 15

*Lau v. Gen Digital Inc.*,
No. 22-CV-08981, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........................................ 8

*Lax v. Toyota Motor Corp.*,
65 F. Supp. 3d 772 (N.D. Cal. 2014) ........................................ 4

*Lineberry v. AddShopper, Inc.*
No. 23-cv-01996, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ........................................ 10, 14

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
89 F.R.D. 497 (C.D. Cal. 1981) ........................................ 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................ 8, 13

*Marshall v. Monster Beverage Corp.*,
No. 14-CV-02203-JD, 2014 WL 3870290 (N.D. Cal. Aug. 6, 2014) ........................................ 6

*McCarthy v. Amazon.com, Inc.*,
No. 3:22-cv-05718-JD, 2023 WL 5358356 (N.D. Cal. Feb. 17, 2023) ........................................ 6

*McClure v. Panzura, LLC*,
No. 24-CV-02966-EKL, 2025 WL 901945 (N.D. Cal. Mar. 25, 2025) ........................................ 5

*Milstead v. Gen. Motors LLC*,
No. 21-CV-06338-JST, 2023 WL 4410502 (N.D. Cal. July 6, 2023) ........................................ 14

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........................................ 11, 12

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........................................ 13

*Moreno v. SFX Ent., Inc.*,
No. CV 14-880 RSWL CWX, 2014 WL 3810121 (C.D. Cal. Aug. 1, 2014) ........................................ 5, 6

*People v. Wilson*,
17 Cal.App.3d 598 (Cal. App. 1971) .......... 9

*PHH Mortg. Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*,
No. 15-CV-04711-JD, 2016 WL 1588270 (N.D. Cal. Apr. 20, 2016) .......... 6

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-CV-0402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) .......... 7

*Recoop LLC v. Outliers Inc.*,
24-cv-01810 (LJL), 2025 WL 1104910 (S.D.N.Y. Apr. 14, 2025) .......... 6

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 11

*Riganian v. LiveRamp Holdings, Inc.*,
No. 25-CV-00824, 2025 WL 2021802 (N.D. Cal. July 18, 2025) .......... passim

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 13, 14

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 12, 13

*Shroyer v. New Cingular Wireless Servs.*, Inc.,
622 F.3d 1035 (9th Cir. 2010) .......... 3

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 7, 8

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 10

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 14

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .......... 3

*STMicroelectronics, Inc. v. Lopez*,
No. 15-CV-3919-PJH, 2015 WL 9178417 (N.D. Cal. Dec. 17, 2015) .......... 5

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 7

*Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 14

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 13, 15

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........ 10

*Ziegler v. WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021) ........ 15

**STATUTES**

28 U.S.C. § 1391 ........ 3

Cal. Penal Code § 502(e)(1) ........ 13

Cal. Penal Code §§ 502(c)(1), (2), (3), (6), (7), (8), (13) ........ 13

**RULES**

Fed. R. Civ. P. 45(b)(2) ........ 5

## I. INTRODUCTION

mParticle and Rokt (collectively, "Defendants" or "mParticle") are two companies who have built their fortune harvesting and monetizing consumers' identifiable, private data. Specifically, their business involves collecting and compiling identifiable, private information about individuals, from their video viewing history down to financial transactions, which they provide to advertisers for profit. Consumers, on the other hand, never consented to Defendant' collection of this data, nor to being profiled and having that information made available to the highest bidder. The hundreds of millions of dollars Defendants earn by selling access to this private information is all obtained in violation of multiple California privacy laws.

Defendants' Motion to Dismiss makes clear that neither Defendant appreciates consumers' right to privacy nor the several laws designed to protect individuals from highly offensive, surreptitious surveillance of their digital lives. Consumers have a right to be left alone from companies seeking to uncover their private online interactions without their express consent. The California Invasion of Privacy Act ("CIPA") and the Comprehensive Computer Data Access and Fraud Act ("CDAFA") provide private rights of action for consumers subjected to this unauthorized online surveillance on their own devices.

Defendants' attempts to transfer this action to the Southern District of New York ("SDNY") are equally misguided. Neither Defendant disputes that this is a proper venue, or that this Court has personal jurisdiction over them. Rather, they claim transfer to New York is proper because ***some*** non-descript employees are "based in" or—even more ambiguous—"assigned to" a New York office. *See* Katz Decl. ¶¶ 11, 14; Irerra Decl. ¶ 7. No actual employees with information relevant to this litigation are identified by name, nor do Defendants address that several current and former employees relevant to this case are actually in ***this*** forum. This action should remain here because this case concerns predominantly California claims, on behalf of California residents, for conduct that—at its core—is strongly connected to this forum. Accordingly, there is no legitimate reason to transfer this action.

For each of these reasons, and those described herein, Defendants' Motion to Transfer Venue and Alternatively Dismiss Plaintiffs' Claims should be denied in its entirety.

## II. BACKGROUND

mParticle has spent years intercepting and compiling (without consent) consumers' email addresses, device identifiers, customer IDs, and any other piece of information that can be used to uniquely identify individual consumers. ¶¶[1] 85-90. It uses this information to build "user profile[s]" tied to a persistent, non-resettable, unique identifier known as the mParticle ID. ¶ 86. The mParticle ID is the basis for mParticle's flagship "ID Sync" product, which identifies users across devices, platforms, sites, and apps by reconciling their data against this identifier ¶¶ 85-90. By secretly compiling information about individuals against the mParticle ID, mParticle uses ID Sync to intentionally subvert privacy controls made available to individuals (e.g., resetting or changing device identifies), as well as broader industry-wide measures, like "ask not to track" pop ups in apps, intended to be privacy-preserving. ¶ 97.

End-running privacy controls allows mParticle to collect and aggregate, without authorization, information that it (and importantly its customers) would not otherwise have access to. *Id.* This includes not only identifying information about a specific individual, but that person's private online communications and interactions with apps and websites across the internet. ¶¶ 93-96. For instance, mParticle's user profile can include the user's age, full name, gender, phone number, address, city, state, zip code, and country-in addition to data about user's specific actions taken on websites including what videos they have watched or their financial transactions. ¶¶ 36, 94-95. mParticle acquires this information through the same SDK, API, and other tracking technology used to collect consumers' identifying information and power its ID Sync product. *Id.* Significantly, users cannot opt out of or stop the collection and aggregation of this data, because even if they switch phones, change identifiers, or take other extreme measures, mParticle's ID Sync will still identify them against its persistent mParticle ID. ¶ 97.

Plaintiffs are three California residents whose private, identifiable data were collected, harvested, and monetized by Defendants. For example, each Plaintiff had their private financial transactions—and identifying information like their email addresses—intercepted by mParticle on the Venmo website and app. ¶¶ 18-19; 38-39. mParticle also intercepted Plaintiffs Hayward and Ybarra's private and identifiable

---

[1] Unless otherwise noted, citations to "¶ __" or "¶¶ __" are citations to paragraphs in the First Amended Complaint ("Complaint"), ECF No. 32.

video-viewing activity from, respectively, the Peacock and NBC Apps. ¶¶ 16-17; 34-35. Each Plaintiff's identifiable, private interactions on these third-party platforms were added to the unique user profiles maintained and leveraged by mParticle for profit. Defendants never attempted to obtain consent from any of the consumers whose personal data it harvested and monetized. ¶ 122.

## III. LEGAL STANDARD

Motions for transfer are adjudicated on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs.*, Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

## IV. ARGUMENT

### A. The Northern District of California Is the Appropriate Venue

A district court has the discretion to transfer a case to another appropriate district[2] provided that it is "a ***more*** convenient forum" *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (emphasis added). Among other factors, Courts consider the plaintiff(s)' choice of forum, the convenience of the parties and witnesses, access to evidence, familiarity with the law, and local interests. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1042 (S.D. Cal. 2023).

Even though this case was brought by California Plaintiffs, for claims arising predominantly under California law, based on events occurring, largely, in California, Defendants' move to transfer the venue to the Southern District of New York. Their Motion should be denied.

***Plaintiffs' Choice of Forum.*** A court should give "great weight to the plaintiff's choice of forum, especially when the plaintiff has chosen to file the lawsuit in its home forum." *Id.* That an action is on behalf of a class only "slightly reduce[s]" the weight given to Plaintiffs' choice of forum "when there is no evidence of forum-shopping." *Id.* at 1042-43.

[2] Defendants are not challenging the propriety of Plaintiffs' choice in venue pursuant to 28 U.S.C. § 1391.

Here, all three Plaintiffs are residents of California, with Plaintiffs Garcia and Ybarra residing in this District. ¶¶ 12, 23, 31. Plaintiffs rightly chose to bring this action in their home forum given the overwhelming predominance of California claims (*i.e.*, invasion of privacy, violation of the California Constitution, violations of CIPA and the CDAFA)[3] and because a significant portion of the conduct alleged, including as it relates to them, occurred in this forum. As alleged in the Complaint, the interception, use, and storage of Plaintiffs' and other California class members' personally identifiable information and other private data occurred in this State. ¶ 61. This includes, at least, the interception of Plaintiffs' and California Class members' data, ¶ 62, the marketing and selling of the technology at issue in this Action to California companies and companies that operate in California , ¶¶ 63-64, and the sharing of Plaintiffs' and Class members' data to California-based companies, including Meta and Google. ¶ 65.

Defendants' claim that Plaintiffs are engaging in forum-shopping because their connections to California are "attenuated" ignores these facts. MTD at 1. While the action brings nationwide claims, California users, California claims, and Defendants' California connections are indisputably at the core of this case. Accordingly, the Action should remain in California.

***Convenience of the Parties.*** To show inconvenience of any witnesses, "the moving party should state the witnesses' identifies, locations, and content and relevance of their testimony." *Greenley*, 684 F. Supp. 3d at 1043. It is not enough for the moving party to "rely on vague generalizations as to the convenience factors." *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002). A movant who fails to do so cannot carry its burden of showing this factor weights in favor of transfer. *See Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 779 (N.D. Cal. 2014).

Here, Defendants fall woefully short of meeting their burden. Defendants identify by name and location only two employees: mParticle's Chief Technology Officer, Andrew Katz, who resides in ***Florida***, and Rokt's People Operations Manager, who resides in ***New Jersey***. Otherwise, Defendants rely on vague claims that ***some*** unidentified employees, including non-descript software engineers, are "based out of" New York offices. MTD at 6. "Based out of" is not the same as residing in, and Defendants do not

[3] Defendants will undoubtably argue these claims can only be brought on behalf of California residents. While Plaintiffs dispute this at this stage, to the extent these claims can only be brought by California residents only further bolsters that this is the most convenient forum.

even attempt to explain what relevant testimony these employees may or may not provide. This is insufficient to meet Defendants' burden, particularly in light of Plaintiffs' allegations that several key employees—such as mParticle's former Chief Marketing Officer and Head of Data—are both located in ***this*** forum, alongside 26 other employees. ¶ 66; *see also Epic Games, Inc.*, 435 F. Supp. 3d at 1042 ("defendant does not identify any one of [its employees]" that "would be inconvenienced by traveling from North Carolina headquarters to this district for trial."). Defendants do not dispute these allegations and conveniently make no mention of their California ties.

***Convenience of Witnesses.*** Defendants' separate claim that non-party witnesses will be inconvenienced falls equally flat. Several non-party witnesses, such as SoFi, PayPal, Airbnb, and DryBar—all of whom used Defendants' technology—are located in this forum. ¶¶ 64, 108-14. So too are Google, Meta, and Adobe, to whom mParticle forwards user data to target Class Members. *Id.* That three clients out of thousands (JetBlue, NBC Universal, and Venmo) are located outside the forum is of no moment, particularly given Defendants' conspicuous silence regarding how many of their clients are in this forum. *See McClure v. Panzura, LLC*, No. 24-CV-02966-EKL, 2025 WL 901945, at *6 (N.D. Cal. Mar. 25, 2025) (defendant's identification of "some non-party witnesses located in Texas" was not sufficient without a "show[ing] that these witnesses are important to the litigation or that they would offer non-cumulative testimony"); *STMicroelectronics, Inc. v. Lopez*, No. 15-CV-3919-PJH, 2015 WL 9178417, at *5 (N.D. Cal. Dec. 17, 2015) (similar). In any event, any testimony or documentary evidence needed from these clients can readily be obtained regardless of forum, such that this factor does not weigh in favor of transfer. *See* Fed. R. Civ. P. 45(b)(2) (explaining depositions and documents can be obtained whenever the place of compliance is within 100 miles of the non-party).

***Location of Evidence.*** For similar reasons, the locations of documents and servers do not support Defendants' Motion to Transfer. There is no inconvenience of producing documents or sitting for depositions when virtually all of this activity now occurs remotely. *See Greenley*, 684 F. Supp. 3d at 1045 (where majority of evidence is likely "predominantly electronic and, therefore, easily transported" is location of evidence is "neutral or insignificant."); *Moreno v. SFX Ent., Inc.*, No. CV 14-880 RSWL CWX, 2014 WL 3810121, at *11 (C.D. Cal. Aug. 1, 2014) (rejecting defendants argument that "New York offers

a greater ease of access to sources of proof" because evidence location presents no burden). And, again, this argument ignores that substantial evidence—such as Plaintiffs' device data or data forwarded to third parties like Meta, Google, and Adobe—will be obtained from their domicile in California.

***Other Factors Weigh Against Transfer.*** Notably absent from Defendant's Motion is any mention of the predominance of California law, which California-based Courts are best equipped to handle and have a strong interest in overseeing.[4] *See Greenley*, 684 F. Supp. 3d at 1043 ("a California district court is more familiar with California law than district courts in other states."); *Moreno*, 2014 WL 3810121, at *10 (same); *Hendricks v. StarKist Co*., No. 13-CV-729 YGR, 2014 WL 1245880, at *5 (N.D. Cal. Mar. 25, 2014) (same). Both of these factors weigh against transfer too.

Taken together, California has significantly more connection to the conduct, claims, and relevant witnesses than New York. None of Defendants' cited cases involve these types of clear ties to the forum, and therefore do not support their request to transfer. *See* MTD at 5-6 (citing *McCarthy v. Amazon.com, Inc*., 3:22-cv-05718-JD, 2023 WL 5358356, at *1 (N.D. Cal. Feb. 17, 2023) (claims not related to "conduct within California"); *Bride v. Snap Inc.*, No. 21-CV-03473-JD, 2021 WL 3493662, at *2 (N.D. Cal. Aug. 9, 2021) (same); *PHH Mortg. Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP,* No. 15-CV-04711-JD, 2016 WL 1588270, at *2 (N.D. Cal. Apr. 20, 2016) (same); *Marshall v. Monster Beverage Corp.*, No. 14-CV-02203-JD, 2014 WL 3870290, at *3 (N.D. Cal. Aug. 6, 2014) (same); *Continental Automotive Systems, Inc. v. Avanci, LLC*, 19-CV-02520-LHK, 2019 WL 6735604, at *12 (N.D. Cal. Dec. 11, 2019) ("[p]laintiff is not a resident of this [d]istrict" and did "not allege[] that a substantial part of the events underlying [p]laintiff's claims took place in California, or that the Northern District of California has a special local interest in the issues raised")).[5] Defendants' Motion to Transfer should be denied.

**B. Plaintiffs' Privacy Claims Should Be Sustained**

In analyzing whether a plaintiff has sufficiently pled common law intrusion upon seclusion, courts

---

[4] *Recoop* and *Gabrielli* are inapposite as these cases ***originated*** in SDNY and were not transferred there. *See* MTD at 6 (citing *Recoop LLC v. Outliers Inc*., 24-cv-01810 (LJL), 2025 WL 1104910, at *6-8 (S.D.N.Y. Apr. 14, 2025) (action originally filed in New York); *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025) (same)).

[5] In *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 89 F.R.D. 497, 501 (C.D. Cal. 1981) the court granted a change of venue because of the "risk of an unfair trial." That is not a risk here.

evaluate whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). Both requirements are satisfied here.

***Reasonable Expectation of Privacy.*** Several District Courts in this Circuit have acknowledged that consumers have a reasonable expectation not to be surreptitiously identified and profiled across the internet. *See Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824, 2025 WL 2021802, at *3, 5-6 (N.D. Cal. July 18, 2025) (holding a company that "generate[s] uniquely identifying profiles" from users' internet activity commits an intrusion upon seclusion); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 (9th Cir. 2020) (finding reasonable expectation of privacy over "highly personalized profiles" compiled from "internet browsing histories"); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 970 (C.D. Cal. 2023) (same). This is precisely what Plaintiffs allege here. *See supra* Section II. And although not required, Plaintiffs further identified specific examples of the sensitive behavioral information Defendants intercepted, further bolstering Plaintiffs' expectation of privacy. ¶¶ 18-19, 27, 35-36, 94-95 (explaining Defendants intercepted private transaction data and video-viewing history); *see also Griffith,* 697 F. Supp. 3d at 971 (recognizing right to privacy in video-viewing data); *Silver v. Stripe Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (same for financial transactions).

Defendants' insistence that there is no right to privacy on the internet is grossly inconsistent with the law, including the cases cited above. MTD at 8-9. The cases Defendants rely on are readily distinguishable, involving either data collection by the website owner themselves (not a third party), accidental data breaches, or (even more off point) session replay cases involving screen recordings from a singular, innocuous website. *See* MTD at 8-9 (citing *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (session replay technology on a singular website used to order pizza); *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402, 2024 WL 5114133, at *7 (S.D. Cal. Dec. 13, 2024) (session replay technology on a singular website used to buy tires); *Hubbard v. Google LLC,* No. 19-CV-07016, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (collection of data from own web properties and services); *I.C. v. Zynga, Inc.* 600 F.Supp.3d 1034, 1049 (N.D. Cal. 2022) (accidental data breach). These cases are nothing like Defendants' intrusive, wide-spread surveillance of

Plaintiffs and Class members to develop unique, identifiable profiles for advertising.

***Highly Offensive.*** Whether a privacy intrusion is highly offensive is a "factually intensive . . . inquiry" on which "courts must be reluctant to reach a conclusion at the pleading stage." *See Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025). Like above, several Courts—including cases cited by Defendants—have found that the surreptitious tracking and profiling of users' private and identifiable online activity to be highly offensive. *Id.* (rejecting motion to dismiss on these grounds); *Riganian*, 2025 WL 2021802, at *7 (same); MTD at 9 (citing *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (noting the "surreptitious recording" of a plaintiff's . . . activity [may] constitute an actionable intrusion"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (denying motion to dismiss because the "surreptitious data collection" on websites owned by companies other than the defendant may be highly offensive)).[6] That the data intercepted by Defendants involved inherently private information further confirms the offensiveness of Defendants' conduct. *See Lau v. Gen Digital Inc.*, No. 22-CV-08981, 2024 WL 1880161, at *3 (N.D. Cal. Apr. 3, 2024) (finding collection of "video viewing histories" sufficiently offensive); *Silver*, 2021 WL 3191752, at *6 (same for financial information).

Defendants attempt to avoid this outcome by relying on outdated and readily distinguishable cases. *See* MTD at 9 (citing *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (commingling of data collected from data obtained from defendant's ***own web properties***); *Hubbard,* 2024 WL 3302066, at *7 (same); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (same); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of innocuous data, *i.e.*, LinkedIn profile URLs and LinkedIn ID); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (seeking to hold Apple liable for third-party software incorporated in individual

[6] Defendants' attempt to distinguish *Facebook Tracking* by claiming this action does not allege "users were misled" fails. MTD at 10. Nothing in that decision turned on an actional misrepresentation. *See Riganian,* 2025 WL 2021802, at *6 (noting the same). But in any event, Plaintiffs allege here that Defendants' conduct was never disclosed.

apps that collected information like geolocation and app usage data)).[7]

### C. Plaintiffs' CIPA § 631 Claim Should Be Sustained

Defendants primarily attack Plaintiffs' CIPA § 631 claim by arguing that their interceptions supposedly do not occur while the information is "in transit."[8] MTD at 11. This is wrong. mParticle's SDK and API immediately intercepted Plaintiffs' identifying information and the content of their communications (*e.g.*, video-viewing and financial transactions) while these communications were occurring in real-time and before they were received by the intended recipient. ¶¶ 34-36. This is by virtue of how this type of technology functions. ¶ 170; *see also Riganian,* 2025 WL 2021802, at *10 (finding similar allegations sufficient to allege "in transit" requirement). The two cases Defendants' cite lacked these types of robust allegations and, therefore, do not support its argument. *See* MTD at 11 (citing *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (no allegations of "how the software works or how the interception occurs"); *People v. Wilson*, 17 Cal.App.3d 598, 603 (Cal. App. 1971) (communication was indisputably sent after it was received by the intended recipient)).

Though Defendants try to distract from these allegations by noting that their ***identity matching*** occurs via a "multi-step process," MTD at 11, the first step in that process ***is the interception*** of matched data**.** ¶¶ 87. The later steps in that process, which are impermissible uses of data mParticle unlawfully intercepted, return identity information to customers after checking its ID Sync database. *Id.* Defendants' subsequent disclosure of private information ***after*** interception does not change the fact that the initial interception occurs while that data was in transit.

Finally, Defendants' argument that Plaintiffs' claims under Section 631's third and fourth clause fail because they have not alleged a predicate interception ignores these facts and fails for the same reason. Plaintiffs clearly allege an interception while the communication is in transit as explained above, as well

[7] Several courts have also distinguished *In re iPhone* and *In re Google, Inc. Privacy Policy* on grounds that the alleged conduct stopped "after the plaintiffs stopped using the defendant's services." *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1158 (N.D. Cal. 2021); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 n.8 (9th Cir. 2020) (same). Here, mParticle constantly uses and discloses the profile data at issue for its own business purposes. *See* Section II.

[8] Plaintiffs clearly allege under CIPA § 631 that mParticle intentionally intercepted and used the content of Plaintiffs' communications. ¶¶ 87, 91-94, 170-172.

as that Defendants' used and (at a minimum) aided and abetted such violations through its intrusive software. ¶¶ 99-107 (alleging mParticle uses profile data to power its machine learning models for features like "predicative attributes" and data enrichment that it sells to its clients); ¶¶ 108-114 (alleging mParticle integrates with advertising platforms so advertisers can identify and target individuals); *see also Jones v. Peloton Interactive, Inc.*, No. 23-CV-1082, 2024 WL 3315989, at *5 (S.D. Cal. July 5, 2024) (finding third prong established where the defendant "uses intercepted communications to improve . . . its proprietary machine learning software").[9]

**D. Plaintiffs' CIPA § 632 Claim Should Be Sustained**

CIPA § 632 prohibits any person from "intentionally" and "without the consent of all parties" using a "recording device" to "eavesdrop" or "record [a] confidential communication." CIPA § 632(a). Defendants only challenge whether the communications were "confidential," arguing that Plaintiffs do not have an expectation of privacy in any communications occurring online. MTD at 12. This argument fails for the same reasons set forth above in Section IV.B, as several courts acknowledge individuals have an expectation not to have their private online communications—like video-viewing activity and private financial transactions—eavesdropped on by unknown third parties. *See Griffith.*, 697 F. Supp. 3d at 973 (sustaining § 632 claim against TikTok based on similar technology that collects users' identifying information and behavioral data to create user profiles); *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (finding communications sufficiently confidential which involved "personally identifiable browsing and purchase history" that is compiled into "detailed profiles of all Plaintiffs' online activity"); *Bales v. Sierra Trading Post, Inc.*, No. 13CV1894, 2013 WL 6244529, at *3 (S.D. Cal. Dec. 3, 2013) (finding "personal financial information" sufficiently "confidential" for purposes of § 632).

---

[9] mParticle's claim that CIPA and CDAFA cannot apply to non-California residents, MTD at 3 n.2, is inconsistent with established authority. *See Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (holding CIPA applies to non-California residents); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1184 (N.D. Cal. 2019) (sustaining non-California residents' CDAFA claims). The court in *Lineberry v. AddShopper, Inc.* only dismissed non-residents' claims because, unlike here, "the complaint contains no allegations that any of the unlawful conduct occurred in California." No. 23-cv-01996, 2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025).

Defendants' suggestion that a presumption exists that internet communications are not private, MTD at 12, has been rejected by several courts. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632"); *Griffith*, 697 F. Supp. 3d at 971 (same). Defendants have mustered only one case ***pre-dating*** these decisions apparently recognizing such a presumption, but that outlier decision was an action against a session replay provider who allegedly recorded videos on behalf of the website operator reflecting searches for clothing. MTD at 12 (citing *Revitch v. New Moosejaw, LLC* No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). But even if such a presumption existed, Defendants' repeated eavesdropping across thousands of web properties, including those involving objectively sensitive data, readily rebuts any presumption the communications were not confidential.[10]

**E. Plaintiffs' CIPA § 638.51 Claim Should Be Sustained**

CIPA § 638.51 states that a person "may not install or use a pen register or a trap and trace device without first obtaining a court order." *Id.* Consistent with CIPA's statutory definitions (CIPA § 638.50(c)), several Courts have recognized that software that records identifying information is a trap and trace device. *See In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557, 2025 WL 2243615, at *6 (N.D. Cal. Aug. 6, 2025) (holding Meta Pixel, which operates similarly as mParticle's technology, constitutes a pen register); *Riganian* , 2025 WL 2021802, at *11 (JavaScript code and SDK that track users' name, email, phone number are pen registers); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (software trackers that intercept users' IP addresses are pen registers); *Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (finding TikTok's similar tracking software "is plausibly a trap and trace device"). Similar to these cases, Plaintiffs allege here that Defendants intercepted and recorded name, phone number, email, customer IDs, device identifiers, and IP addresses through their tracking software. ¶¶ 87, 91-94.

[10] The only remaining case cited by Defendants does not suggest such a presumption exists. MTD at 12 (citing *In re Meta Pixel Healthcare Litig.* 647 F.Supp.3d 778, 799 (N.D. Cal. 2022) (merely noting that medical data is particularly private).

Defendants do not cite a ***single*** case[11] disputing the sufficiency of these allegations and, instead, ask this Court to dig through the legislative history and find—for the first time and inconsistent with its plain language—that CIPA § 638.51 only applies to telephone calls. MTD at 12-13. Courts that have considered this argument have consistently rejected it. *See, e.g., Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (rejecting argument that § 638.51 applies only to telephones and specifically holding that it applies to "software that identifies consumers, gathers data, and correlates that data"); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (same); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533, 2025 WL 1939957, at *11-12 (N.D. Cal. July 14, 2025) (same); *Riganian*, 2025 WL 2021802, at *11 (same). This Court should too.

In any event, the legislative history Defendants ask this Court to parse does not support its argument. MTD at 13. That the legislature discussed and considered "telephone" lines and calls, yet ultimately chose ***not*** to use that language in the statutory definition, confirms the law was intended to be broader than that form of communication. *See* Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015) at 10 (choosing to define these terms more broadly in recognition of the "age of rapidly changing technology."); *id*. at 11 (explaining pen registers and trap or trace devices "track which people . . . are communicating with one another and at what times"); *see also Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) ("California courts do not read California statutes as limiting themselves to the traditional technologies or models in place at the time the statutes were enacted."); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (rejecting the same legislative history argument).

Lastly, mParticle's argument about § 638.52(c) and (d)'s language is a red herring. *See* MTD at 13. Section 638.52 "merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line" and for that type of pen register, "the Legislature understandably required . . . court approval to disclose the phone number to which the pen register would be attached." *See Shah*,

[11] Defendants only cite a concurring decision discussing whether CIPA § 631(a) applies to internet communications—it does. *See* MTD at 13 n.8 (citing *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) at *2, n.2 (Bybee, J., concurring)

754 F. Supp. 3d at 930. That does not "alter the statutory definition of a pen register stated in § 630.50(b)." *Id.*; *see also Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (rejecting the same argument based on § 638.52 because the definitions in § 638.50 refer to "device or process" which is intentionally broader). The Court should follow suit and reject this unsupported argument.

**F. Plaintiffs' CDAFA Claim Should Be Sustained**

A plaintiff "who suffers damage or loss by reason of violation" of the CDAFA "may bring a civil action against the violator." Cal. Penal Code § 502(e)(1).[12] The CDAFA does not define or set a monetary threshold for damage or loss—"any amount of damage or loss may be sufficient." *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025). Courts have held that allegations of a defendant's "unjust profit" from the use of a plaintiff's private data constitutes "a damage or loss within the meaning of the CDAFA." *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025); *Rodriguez*, 722 F. Supp. 3d at 1110 ("a reasonable juror could find that [p]laintiffs suffered damage or loss [under the CDAFA] because Google profited from the misappropriate of [their] data.").

Here, Plaintiffs allege Defendants intercepted and unjustly profited from the use of their data without compensation, including by selling access to the comprehensive user profiles it created with that data, using the data for data enrichment, and facilitating targeted advertising—all for financial gain. ¶¶ 22, 30, 42, 46-47, 85-86, 99-107, 108-14, 121, 128, 184, 208, 214. This is sufficient to establish damage or loss. *See Smith*, 2025 WL 2210002, at *3.

The cases relied on by Defendants do not even touch on the CDAFA's damage or loss requirement, but the standard for ***UCL or conversion claims***, which are notably different. MTD at 14 (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (evaluating ***lost money or property*** for UCL claim); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (same); *Low*, 900 F. Supp. 2d at 1030 (noting conversion requires a ***property interest***); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1074 (N.D. Cal. 2012) (same)). As noted in the

---

[12] Defendants do not challenge, and therefore concede, that Plaintiffs adequately allege all other elements of their CDAFA claim. *See* Cal. Penal Code §§ 502(c)(1), (2), (3), (6), (7), (8), (13); ¶¶ 203-207.

cases above, the CDAFA contains neither of these requirements. In any event, the idea that plaintiffs do not have a property interest in their own personal information has been rejected in more recent decisions. *See Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) ("plaintiffs have a property interest in their data."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (rejecting the applicability of *Low* because "California courts have also acknowledged that users have a property interest in their personal information"); *Griffith*, 697 F. Supp. 3d at 975 (same).

The only two cases Defendants cite that actually evaluate CDAFA claims also do not warrant dismissal here. MTD at 14. In *Lineberry*, 2025 WL 551864, at *2, the plaintiffs vaguely asserted they suffered "damage or loss" but did not explain "how or why that is the case" such as by alleging there was a "market" for the data at issue. Here, Plaintiffs clearly allege there is a market—it is Defendants' entire business model. ¶¶ 1-8, 46-49, 51-53, 108-114, 208. And in *Doe v. Cty. of Santa Clara*, No. 23-CV-04411-WHO-2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024), the Court rejected Plaintiffs' CDAFA claim under a "loss of the value" theory[13], but did not evaluate whether Defendants' further monetization of that information was sufficient to establish damage of loss, like here and in the cases cited above. Accordingly, Plaintiffs' CDAFA claim should be sustained.

**G. Plaintiffs' Unjust Enrichment and Injunctive Relief Claims Should Be Sustained**

Defendants appropriately relegate to last place their argument that under *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020), Plaintiffs' unjust enrichment and injunctive relief claims must be dismissed for lack of equitable jurisdiction. MTD at 14-15. They are wrong for three reasons.

First, Plaintiffs allege that they have "no adequate remedy at law." ¶¶ 174, 185, 197, 210. Many well-reasoned decisions in this District hold this is sufficient at this stage to satisfy *Sonner*. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023 ("Under *Sonner*, a plaintiff "need not explain in great detail why her legal remedies are insufficient; an allegation to that effect is generally enough."); *Doe v. Meta Platforms*, Inc., 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (denying motion to dismiss because "plaintiffs do allege that their remedies at law are inadequate"); *Milstead v. Gen. Motors LLC*, No. 21-

[13] Furthermore, several Courts have accepted the "loss of value" theory for purposes of CDAFA. *Rodriguez*, 772 F. Supp. 3d at 1110; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023).

CV-06338-JST, 2023 WL 4410502, at *7–8 (N.D. Cal. July 6, 2023) (same); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 949 (N.D. Cal. 2023) (same).

Second, Plaintiffs' unjust enrichment claim seeks equitable disgorgement of profits without a corresponding loss in the form of money damages, ¶¶ 217-218—a scenario where legal damages alone would be inadequate. *See In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 599 ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 803 (same). Neither of the two cases Defendants cite warrant a different conclusion here. *See* MTD at 14. *In re Ford Tailgate Litig.*, No.11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) did not involve a claim for equitable disgorgement under California law. *Id.* And *Hubbard,* 2024 WL 3302066, at *6 is inapplicable because the only harm alleged was Google's unlawful collection, which was fully covered by the plaintiffs' other 50 causes of actions. The same is not true here.

Third, injunctive relief is a prospective remedy and, as a matter of law, legal remedies for past harm are not an adequate remedy for prospective harm. *Ziegler v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (explaining damages for past conduct is not an adequate remedy for future harm); *Brooks v. Thomson Reuters Corp*., No. 21-CV-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (same).

## CONCLUSION

Defendants' Motion should be denied for each of the reasons described herein.

Dated: August 22, 2025

*/s/ William J. Edelman*
William J. Edelman (SBN 285177)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: wedelman@milberg.com

Heather Lopez (SBN 354022)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: hlopez@milberg.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
Yuanchen Lu (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

*Attorneys for Plaintiffs and the Proposed Class*