Matthew E. Lewitz (SBN: 325379)
Email: mlewitz@cozen.com
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: 310.393.4000
Facsimile: 310.394.4700

Erin Bolan Hines (Admitted *Pro Hac Vice* )
Email: ebolanhines@cozen.com
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312.382.3100
Facsimile: 312.382.8910

Attorneys for Defendants
MPARTICLE, INC. and ROKT US CORP.

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER C. HAYWARD, KELLY GARCIA, and MATTHEW YBARRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MPARTICLE, INC. and ROKT US CORP,<br><br>Defendants. | Case No.: 3:25-cv-03551-JD<br><br>**DEFENDANTS MPARTICLE, INC. AND ROKT US CORP.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: September 18, 2025<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Judge: Hon. James Donato |

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................1

II. ARGUMENT ....................1

A. Plaintiffs Fail to Outweigh the Factors in Favor of Transfer to the SDNY ....................1

1. Plaintiffs Waived that the SDNY is a Proper Venue....................1

2. The Convenience and Justice Factors Weigh in Favor of Transfer ....................1

B. Plaintiffs' Claims Should Be Dismissed ....................4

1. The Alleged Activity Did Not Give Rise to a Highly Offensive Intrusion....................4

2. Plaintiffs Fail to Satisfy the Elements of Their CIPA Claims....................5

i. Plaintiffs Do Not Meet the "In Transit" Requirement Under Section 631 ....................5

ii. Plaintiffs Fail to State a Claim Under Penal Code Section 632 ....................6

iii. Plaintiffs' Trap and Trace Claims Fail ....................7

3. Plaintiffs Fail to Establish "Damage or Loss" Under CDAFA ....................9

4. Plaintiffs Equitable Relief Claims Fail....................10

III. CONCLUSION ....................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aviles v. LiveRamp*,
2025 WL 487196 (Cal. Super. L.A. Cty. Jan. 28, 2025) ........ 9

*Bales v. Sierra Trading Post, Inc.*,
No. 13CV1894, 2013 WL 6244529 (S.D. Cal. Dec. 3, 2013) ........ 7

*Bride v. Snap Inc.*,
No. 21-CV-03473-JD, 2021 WL 3493662 (N.D. Cal. Aug. 9, 2021) ........ 1, 2, 3

*Continental Auto. Systems, Inc. v. Avanci, LLC*,
19-CV-02520-LHK, 2019 WL 6735604 (N.D. Cal. Dec. 11, 2019) ........ 3

*Cottle v. Plaid Inc.*,
536 F.Supp.3d 461 (N.D. Cal. 2021) ........ 9, 10

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ........ 6

*Gradney v. Polar Beverages*,
Case No. 25-cv-02149-EMC, 2025 WL 2105831 (N.D. Cal. July 28, 2025) ........ 10

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ........ 5

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) ........ 4

*Hammerling v. Google LLC*,
2022 WL 17365265 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 6

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ........ 4

*Heeger v. Facebook, Inc.*,
509 F.Supp.3d 1182 (N.D. Cal. 2020) ........ 8

*Heiting v, Taro Pharmaceuticals USA, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) ........ 10

*Hernandez-Silva v. Instructure, Inc.*,
Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ........ 6, 10

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

*Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .... 4

*Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) .... 10

*King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .... 5, 7

*Kishnani v. Royal Carribean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .... 8, 9

*Lineberry v. Addshopper, Inc.*, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .... 10

*Mastel v. Miniclip SA*, 549 F.Supp.3d 1129 (E.D. Cal. 2021) .... 5

*Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141 (C.D. Cal. 2009) .... 1

*Mitchener v. CuriosityStream, Inc.*, Case No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .... 8

*Mohamed v. Navy Fed. Credit Union*, Case No. 25-cv-04174-RS, 2025 WL 2337124 (N.D. Cal. Aug. 12, 2025) .... 10

*Moreno v. Johnson & Johnson Consumer Inc.*, Case No. 2:21-cv-02666-AB-PVC, 2021 WL 12302429 (C.D. Cal. Oct. 5, 2021) .... 2, 3, 4

*Pratt v. Huggins*, 2023 WL 4564551 (N.D. Cal. July 17, 2023) .... 10

*Rabinowitz v. Samsung Electronic America, Inc.*, Case No. 14-cv-00801, 2014 WL 5422576 (N.D. Cal. Oct. 10, 2014) .... 3

*Ramos v. Gap, Inc.*, Case No. 23-cv-04715-HSG, 2025 WL 2144837 (N.D. Cal. July 29, 2025) .... 5

*Robert Bosch, LLC v. Snap-On Inc.*, No. CV 11-07784MMM, 2012 WL 12931147 (C.D. Cal. Apr. 4, 2012) .... 3

*Sanchez v. Cars.com*, 2025 WL 487194 (Cal. Super. L.A. Cty. Jan. 27, 2025) .... 9

*Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033 (N.D. Cal. Mar. 3, 2025) .... 4, 9, 10

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 8

*Valenzuela v. Keurig Green Mountain, Inc.*
674 F.Supp.3d 751 (N.D. Cal. 2023) ........ 5, 6

*Vasseur v. Johnson & Johnson Consumer, Inc.*,
Case No. 2:24-cv-07487-MCS-BFM, 2025 WL 576548 (N.D. Cal. Feb. 12, 2025) ........ 1

**Statutes**

Cal. Penal Code § 631(a) ........ 5, 6

Cal. Penal Code § 632 ........ 6

Cal. Penal Code §§ 638.50(b)-(c) ........ 7

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

## I. INTRODUCTION

Through their silence, Plaintiffs concede this action could have been brought in the Southern District of New York. In their insistence to remain before this Court, Plaintiffs overlook that (i) their putative nationwide class action slims down the weight of their chosen forum; (ii) Defendants are headquartered in New York, where the lion's share of Defendants' software engineers and personnel managing relationships with the NY Companies – who will provide substantial, relevant testimony – are located; (iii) the non-party witness NY Companies reside in New York, and (iv) the Southern District of New York is fully equipped to adjudicate Plaintiffs' claims. Plaintiffs harp on the potential to elicit evidence from Defendants' *former* employees and conclusory assertions that a majority of the subject conduct took place in this district. These red herrings and blanket statements do not move the needle. The convenience factors and interests of justice demonstrate that transfer of venue is appropriate. If the Court is inclined to retain this action, Plaintiffs' claims are plagued by pleading defects that warrant dismissal.

## II. ARGUMENT

### A. Plaintiffs Fail to Outweigh the Factors in Favor of Transfer to the SDNY

#### 1. Plaintiffs Waived that the SDNY is a Proper Venue

Defendants established that the SDNY is an appropriate venue where this action could have been brought. (Defs. Mot., Dkt. 39 at 4.) Plaintiffs fail to address this point, thereby waiving any argument that the SDNY is not a proper forum. *See Bride v. Snap Inc.*, No. 21-CV-03473-JD, 2021 WL 3493662, at *1 (N.D. Cal. Aug. 9, 2021) (skipping to convenience factors where "Plaintiffs do not dispute that th[e] case could have been brought" in the transferee district).

#### 2. The Convenience and Justice Factors Weigh in Favor of Transfer

Thus, to determine whether transfer is appropriate, the Court need only consider "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice," all of which weigh in favor of transfer. *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

***First***, as a putative nationwide class action, Plaintiffs' forum selection is given little weight. *Vasseur v. Johnson & Johnson Consumer, Inc.*, Case No. 2:24-cv-07487-MCS-BFM,

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

2025 WL 576548, at *3 (N.D. Cal. Feb. 12, 2025) (transferring venue and noting that "in the class action context [plaintiff's choice of forum] is given less weight"); *Bride*, 2021 WL 3493662, at *2 (same). Plaintiffs acknowledge as much. (Pls. Opp., Dkt. 42 at 3.)

Plaintiffs cite to several readily distinguishable decisions that do not involve a nationwide class (like here), but instead were issued in putative class actions on behalf of California residents only. (*See* Pls. Opp, Dkt. 42 at 3 (citing to *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1035 (S.D. Cal. 2023) (involving California resident filing a putative class action on behalf of similarly situated California residents)), at 5 (citing to *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1041 (N.D. Cal. 2020) (noting courts afford less deference to plaintiff's forum selection in a statewide class action)).) Where, like here, a putative nationwide class would invariably consist of non-California putative class members with purported claims under their respective states' privacy laws (*see* Defs. Mot., Dkt. 39 at 3, n. 2), the Court should not be beholden to Plaintiffs' venue selection. *See Moreno v. Johnson & Johnson Consumer Inc.*, Case No. 2:21-cv-02666-AB-PVC, 2021 WL 12302429, at *2 (C.D. Cal. Oct. 5, 2021) (transferring venue in putative nationwide class action because "any as-yet-unknown named plaintiffs could reside in any state and thus *dilute* the convenience of this forum to Plaintiffs") (emphasis in original).

***Second***, Defendants identify their out-of-state witnesses and the relevant content of their anticipated testimony related to Plaintiffs' claims. Specifically, Defendants identify Andy Katz, mParticle's Chief Technology Officer, located in Florida, and Nataliia Irrera, Rokt's People Operations Manager located in New Jersey. (Dkt. 39 at pp. 5-6; Dkt. 39-1 at ¶¶ 12-15 ; Dkt. 39-2 at ¶¶ 6-9.) Defendants also identify mParticle's software engineers as witnesses, all of whom are located in New York and will provide testimony relevant to the "software implicated by the FAC." (Dkt. 39 at p. 5; Dkt. 39-1 at ¶ 15.) Plaintiffs pull from the internet two of Defendants' former employees who were formerly based in California, a current employee "based in" the San Francisco Bay area, and the number of Defendants' employees listed in California, and then baldly claim that this cherry-picked information weighs in favor of keeping the case in this Court. (FAC, Dkt. 1 at ¶ 66; Pls. Opp., Dkt. 42 at 5.) Notably, Plaintiffs never identify when any of the allegedly actionable conduct took place and, therefore, there is no basis to conclude that former

employees' testimony will be necessary or relevant, particularly when Defendants' current employees can provide non-cumulative relevant testimony.

Moreover, Plaintiffs do not, and cannot, refute the Katz and Irrera Declarations, which identify the witnesses, their locations, and their anticipated testimony. (*See generally*, Pls. Opp., Dkt. 42.) Because the overwhelming majority of Defendants' current employees who have knowledge pertinent to the disputes at issue herein and will inevitably serve as witnesses are almost exclusively located in New York, transfer is appropriate. *Bride*, 2021 WL 3493662, at *2 (transferring venue in putative nationwide class action to district where defendants were headquartered "and most of [defendants'] employees with knowledge relevant to the case, who may serve as trial witnesses, [we]re located" outside plaintiff's chosen district); *Moreno*, 2021 WL 12302429, at *2 (transferring venue where trial testimony of defendant's employees in transferee venue was more important to adjudication of consumer class action than testimony of named plaintiff); *Robert Bosch, LLC v. Snap-On Inc.*, No. CV 11-07784MMM (AGRx), 2012 WL 12931147, at *8 (C.D. Cal. Apr. 4, 2012) (explaining that "although it appears that some party witnesses with information relevant to this action may be located at Bosch's Santa Barbara facility, and at Snap-On's San Jose office, *a majority* of the party witnesses who might be called to testify in this action are located in Michigan or states adjacent thereto, and it would be more convenient for them to attend proceedings in the Eastern District of Michigan").[1]

***Third***, Plaintiffs attempt to draw focus away from the NY Companies who are essential witnesses in this action. (Pls. Opp., Dkt. 42 at 5.) But the NY Companies are squarely relevant to the transfer analysis, as their websites/applications are the only ones specifically implicated by the named Plaintiffs' allegations. (*See* FAC, Dkt. 37 at ¶¶ 13, 27, 32.) Therefore, Plaintiffs cannot credibly contend that the convenience of this narrow set of non-party witnesses can be ignored. *See Continental Auto. Systems, Inc. v. Avanci, LLC*, 19-CV-02520-LHK, 2019 WL 6735604, at *12 (N.D. Cal. Dec. 11, 2019). Plaintiffs' reference to other California-based non-parties with whom Defendants have allegedly done business is untethered from the transfer analysis.

[1] Plaintiffs also disregard the SDNY's interest in regulating companies (*i.e.*, Defendants and the NY Companies) whose operations fall within its borders. *See Rabinowitz v. Samsung Electronic America, Inc.*, Case No. 14-cv-00801, 2014 WL 5422576, at *7 (N.D. Cal. Oct. 10, 2014).



COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

***Fourth***, Plaintiffs incorrectly state that the purported "predominance" of California law is "notably absent" from Defendants' Motion. (Pls. Opp., Dkt. 42 at 6.) Rather, Defendants hit head-on the fact that "New York is no stranger to adjudicating California-based privacy claims and is equally capable of construing relevant California law." (Defs. Mot., Dkt. 39 at 6 (citing to *Recoop LLC v. Outliers Inc.*, 24-cv-01810 (LJL), 2025 WL 1104910, at *6-8 (S.D.N.Y. Apr. 14, 2025); *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025)).); *see also Moreno*, 2021 WL 12302429, at *3 ("federal courts routinely apply the law of states other than those in which they sit, and judges in each jurisdiction are fully capable of deciding issues arising under the relevant law") (internal quotation marks and citation omitted). In sum, the convenience and interest of justice factors weigh in favor of transfer.

**B. Plaintiffs' Claims Should Be Dismissed**

**1. The Alleged Activity Did Not Give Rise to a Highly Offensive Intrusion**

Plaintiffs do not dispute that all of the allegedly actionable conduct occurred while Plaintiffs browsed public-facing websites or online applications. (Pls. Opp, Dkt. 37 at 2-3.) Plaintiffs also acknowledge that, at entirely unspecified times and places, they voluntarily disclosed their personal information through such online activity. (*Id.*) Thus, they do not allege an intrusion that is highly offensive, against the overarching backdrop that "data collection and disclosure to *third parties* that is routine commercial behavior is not a highly offensive intrusion of privacy."[2] *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022) (emphasis added); *see also Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary interest browsing involves the collection of users' data, including by tracking across the internet, and a reasonable user should expect as much.") (emphasis in original); *Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033, 1048 (N.D. Cal. Mar. 3, 2025) (defendant's alleged disclosure of "employment information" and "bank account information" did "not rise to the level of an 'egregious breach of social norms'"); *Harrill v. Emanuel Med. Ctr.*, No. 2:23-cv-01672-DC-

[2] While there are unique instances where particular online activity can give rise to a legitimate privacy intrusion (*e.g.,* browsing the internet using "private" or "incognito" mode, misappropriation of data from online data breach, collection of data from minors, collection and disclosure of personalized medical information), this case doesn't present one of those instances.



COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

CKD, 2025 WL 1635428, at *7 (E.D. Cal. June 9, 2025) (highlighting that disclosure of user's browser history was not highly offensive); *King v. Hard Rock Cafe Int'l (USA)*, Inc., No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419, at *6 (E.D. Cal. June 9, 2025) (declining to find that plaintiff held reasonable expectation of privacy in allegedly intercepted communications based on "bare allegations regarding her interactions" with defendant's website).

**2. Plaintiffs Fail to Satisfy the Elements of Their CIPA Claims**

**i. Plaintiffs Do Not Meet the "In Transit" Requirement Under Section 631**

In their Opposition, Plaintiffs sidestep the express language of Section 631(a)'s first clause, which proscribes intentional wiretapping or unauthorized connection to "any *telegraph or telephone* wire, line, cable, or instrument…." Cal. Penal Code § 631(a) (emphasis added). In this vein, Plaintiffs ignore the Ninth Circuit's recent reaffirmation that Section 631(a)'s first clause applies only to access to telephone or telegraphic lines. *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025); *see also Ramos v. Gap, Inc.*, Case No. 23-cv-04715-HSG, 2025 WL 2144837, at *3 (N.D. Cal. July 29, 2025) (dismissing Section 631(a) claim because "the first clause does not apply to internet communications"); *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1135 (E.D. Cal. 2021) (holding that Section 631(a)'s first clause did not apply because plaintiff's "complaint plainly does not involve any allegations concerning 'telephone wires, lines, or cables'"). Plaintiffs' FAC is bereft of any allegations that Defendants wiretapped or gained unauthorized access to their telephone lines. (*See* FAC, Dkt. 37 ¶¶ 12-42.) This absence is reinforced in Plaintiffs' Opposition. (*See generally* Pls. Opp., Dkt. 42.) Thus, Plaintiffs tacitly concede that their claim under Section 631(a)'s first clause should be dismissed.

While Plaintiffs primarily seek to rehabilitate their Section 631 claim under the second clause, Plaintiffs efforts are in vain. "To be liable [under Section 631(a)'s second clause], the eavesdropper must listen to a communication *while* the same is in transit" with "*while* [being] the key word…." *Valenzuela v. Keurig Green Mountain, Inc.* 674 F.Supp.3d 751, 758 (N.D. Cal. 2023) (emphasis added). Plaintiffs point to a handful of unremarkable, conclusory allegations that fail to establish Defendants' interception of Plaintiffs' communications "while in transit." (*See*

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

Opp. at 9 (citing to FAC, Dkt. 37 at ¶¶ 34-36, 87, 170).) Plaintiff Ybarra's allegations regarding his purported use of the NBC App do not suggest that Defendants' intercepted any data while in transit. (*See* FAC, Dkt. 37 at ¶¶ 34-36.) Further, Plaintiffs' attempt to manufacture a distinction between the alleged identity matching process and supposed interception of data is belied by Plaintiffs' own allegations. (*See* FAC, Dkt. 37 at ¶¶ 86-88.) Plaintiffs do not plausibly allege that their data is collected through a process discrete from the alleged identity matching process. (*See id.*) Plaintiffs' conclusory assertion that Defendants intercepted their data while in transit simply parrots boilerplate pleading requirements for a CIPA claim. (*See* FAC, Dkt. 37 at ¶ 170.)

Finally, Plaintiffs rely on a single distinguishable case in which, unlike here, the plaintiffs set forth a plausible and detailed theory as to real-time interception. (Pls. Opp. at 9 (citing to *Riganian v. LiveRamp Holdings, Inc.*, Case No. 25-cv-00824-JST, 2025 WL 2021802, at *10 (N.D. Cal. July 18, 2025).) In sum, Plaintiffs do not plausibly plead the interception of any communications "while in transit." *Hernandez-Silva v. Instructure, Inc.*, Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) (dismissing CIPA claim where plaintiff's allegations "fail[ed] to indicate *when* the interception occurs") (emphasis in original) (internal quotation marks omitted); *Hammerling v. Google LLC*¸ 2022 WL 17365265, at *10 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (confirming that "in transit" requirement necessitates allegations about "in real time" interception); *Valenzuela*, 674 F.Supp.3d at 758-59 (dismissing Section 631(a) "simultaneity" claim as conclusory).

Finally, as set forth in Defendants' moving papers, Plaintiffs' failure to establish a predicate violation under Section 631(a)'s first and second clauses necessarily precludes their claims under the third and fourth clauses. (*See* Defs. Mot., Dkt. 39 at 12.)

**ii. <u>Plaintiffs Fail to State a Claim Under Penal Code Section 632</u>**

Under Section 632, a communication is deemed confidential only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.4th 766, 776-77 (2002). This analysis depends on the context of the circumstances of the "actual conversation, not its content." *Id.* at 774. "Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality,

especially if those communications can be easily shared by the recipients of the communications." *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025). Here, Plaintiffs do not plausibly allege that they had a reasonable expectation of privacy in their routine consumption of commonplace websites for everyday use.

Plaintiffs' reliance on *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025), is misplaced. In *Rack Room*, plaintiffs specifically alleged their reasonable expectation of privacy in their browsing history "as a result of the disclosures and promises in Rack Room's privacy policy[,]" which specified that their bundled information would not be collected by third parties. 2025 WL 1085169, at *5. Plaintiffs do not allege that they were blindsided by the collection of their data contrary to similar disclosures or representations, but instead concede to the contrary. (Pls. Opp., Dkt. 42 at 8, n. 6.) Similarly, *Bales v. Sierra Trading Post, Inc.*, No. 13CV1894 2013 WL 6244529 (S.D. Cal. Dec. 3, 2013), is distinguishable as it involved the disclosure of personal financial information, including plaintiff's credit card number. 2013 WL 6244529, at *3. Here, Plaintiffs do not allege that any of their financial account or credit card information was collected. (*See generally* FAC, Dkt. 37.) Further, Plaintiffs tacitly acknowledge that all of their Venmo transaction history can in fact be publicly displayed and viewed by individuals other than the counterparties to such transactions.[3] (FAC, Dkt. 37 at ¶¶ 19, 27-29, 39.)

**iii. <u>Plaintiffs' Trap and Trace Claims Fail</u>**

Plaintiffs confirm that their trap and trace claim seeks to hold Defendants liable for their alleged recording of "identifying information," but not the substance of their online communications. (Pls. Opp, Dkt. 42 at 11.) This tracks the plain language definitions of a "pen register" and "trap and trace device" as capturing the "dialing, routing, addressing or signaling information" of a communication, "but not the contents of a communication." Cal. Penal Code Sections 638.50(b)-(c). While Plaintiffs' Opposition narrowly spotlights certain alleged identifying information as being collected (e.g., device identifiers, IP addresses, customer IDs,

[3] Plaintiffs impliedly acknowledge their Venmo transaction history can be publicly displayed, yet omit any allegations as to whether they consented to such disclosure. (*See* FAC, Dkt. 37 at ¶¶ 12-42.) Instead, Plaintiffs obscurely allege in the passive voice that Venmo transaction "information is sent even if the user marked their profile as private." (*Id.* at ¶¶ 19, 39.) This equivocation erodes a finding that Plaintiffs held a reasonable expectation of privacy in such transactions.



COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

etc.), Plaintiffs allege that Defendants' technology supposedly captures a broader swath of information, namely the *substance* of Plaintiffs' activity on and communications with the NY Companies' websites. (*See, e.g.*, FAC, Dkt. 37 at ¶¶ 5, 17, 19, 36, 39.) To the extent Plaintiffs' trap and trace claim rests on the purported collection of IP addresses and other anonymous device identifiers, Plaintiffs' privacy has not been invaded because they have no expectation of privacy in that data. *See, e.g.*, *Mitchener v. CuriosityStream, Inc.*, Case No. 25-cv-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025); *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1189 (N.D. Cal. 2020); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). Conversely, to the extent Plaintiffs' trap and trace claim is predicated on the alleged collection of the contents of Plaintiffs' communications, Plaintiffs plead their way out of a trap and trace claim. *See Mitchener*, 2025 WL 2272413, at *5 ("If Defendant instead collects content information from communication between the parties … then the TikTok software is not a trap and trace device and § 638.50 does not apply."); *Kishnani v. Royal Carribean Cruises Ltd.*, Case No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (same).

Further, Plaintiffs attempt to brush off the trap and trace statute's legislative history and express language, which are replete with reference to telephone lines only, as "red herrings." (Pls. Opp., Dkt. 37 at 12.) But the statute's legislative underpinnings and confined application to telephones lines is clear. (*See, e.g.*, RJN, Dkt. 40, Ex. 1 at 6 ("any location information obtained by a pen register or a tra[p] and trace device is limited to the information that can be determined from *the telephone number*.") (emphasis added).) While Plaintiffs cherry-pick language from the California Senate Committee on Public Safety's Analysis regarding "th[e] age of rapidly changing technology" in support of expansive application of the trap and trace statute (Pls. Opp., Dkt. 37 at 12), the language immediately following that excerpted text confirms that the statute is limited to telephone lines. (RJN, Dkt. 40, Ex. 2 at 22 (describing pen registers as "record[ing] all outgoing numbers *from a particular telephone line*" and trap and trace devices as "record[ing] what numbers *have called a specific telephone line*, i.e., all incoming phone numbers") (emphasis added).) And contrary to Plaintiffs' suggestion, various courts have endorsed the conclusion that trap and trace claims do not arise from similar internet tracking software. *See, e.g*, *Mitchener v.*

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

*CuriosityStream, Inc.*, 2025 WL 2272413, at *5; *Kishnani*, 2025 WL 1745726, at *5; *Sanchez v. Cars.com*, 2025 WL 487194 (Cal. Super. L.A. Cty. Jan. 27, 2025) ; *Aviles v. LiveRamp*, 2025 WL 487196 (Cal. Super. L.A. Cty. Jan. 28, 2025).

### 3. Plaintiffs Fail to Establish "Damage or Loss" Under CDAFA

Plaintiffs do not confront the absence of allegations in the FAC as to how they've been deprived of control of their personal data. (*See* Pls. Opp., Dkt. 1 at 13-14.) Nor do Plaintiffs address their FAC's lack of plausible allegations as to how they've "suffered damage or loss by reason of a violation" of CDAFA. (*See id.*) In that vein, Plaintiffs fail to explain how they have suffered an economic loss each time their data is allegedly collected and shared. (*See id.*) Taken together, these omissions warrant dismissal of Plaintiffs' CDAFA claim.

Plaintiffs echo their FAC's conclusory assertions, namely that Defendants intercepted their data but lost control of such data or the ability to receive compensation for that data in violation of CDAFA. (Pls. Opp., Dkt. 42 at 13.) But Plaintiffs do not allege any facts indicating that they ever intended to sell their personal data but were deprived of the opportunity or financially harmed in doing so. (*See generally* FAC, Dkt. 32.) Plaintiffs cannot rely on the alleged generalized loss of control or value of their data to prop up their CDAFA claims. *Shah*, *supra*, 768 F.Supp.3d at 1048 (dismissing CDAFA claim because, among other reasons, plaintiffs failed to plead "that they ever attempted or intended to participate in the market for that information [d]efendant disclosed or that they derived economic value from that information"); *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 487-88 (N.D. Cal. 2021) ("Plaintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data … is 'damage or loss' within the meaning of the CDAFA.")

While Plaintiffs double-down on their theory that they maintain a claim because Defendants allegedly monetized the sharing or use of their data (Pls. Opp, Dkt. 42 at 13-14), Defendants' supposed profit is insufficient to establish that Plaintiffs suffered a loss as contemplated under CDAFA. *Shah*, *supra*¸ 768 F.Supp.3d at 1048 (holding that plaintiffs could not establish "loss" under CDAFA based on "the profit Defendant made as a result of disclosing Plaintiffs' data"). While Plaintiffs point to a handful of decisions permitting CDAFA claims to

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

move forward based on the alleged mere loss in control of data alone, the weight of authority declines to consider such alleged privacy invasion as "damage or loss" under CDAFA. *Hernandez-Silva*, *supra*, 2025 WL 2233210, at *6; *Heiting v, Taro Pharmaceuticals USA, Inc.*, 709 F.Supp.3d 1007, 1021 (C.D. Cal. 2023) (collecting cases); *Shah*, *supra*, 768 F.Supp.3d at 1048; *Cottle*, *supra*, 536 F.Supp.3d at 487-88; *Lineberry v. Addshopper, Inc.*, 2025 WL 551864, at *2-3 (N.D. Cal. Feb. 19, 2025)[4]; *Pratt v. Huggins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023); *see also Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *15 (E.D. Pa. Nov. 25, 2024).

### 4. Plaintiffs Equitable Relief Claims Fail

Plaintiffs concede their conclusory allegation that they lack an adequate remedy at law, and contend that they can limp past the pleading stage on that basis alone. (Pls. Opp., Dkt 37 at 14.) Because Plaintiffs have not shown how damages are inadequate, their unjust enrichment claim should be dismissed. *Gradney v. Polar Beverages*, Case No. 25-cv-02149-EMC, 2025 WL 2105831, at *12 (N.D. Cal. July 28, 2025). Similarly, because injunctive relief is a remedy and not an independent cause of action, and given Plaintiffs failure to plausibly explain the absence of an adequate remedy at law, their injunctive relief should be dismissed. *Mohamed v. Navy Fed. Credit Union*, Case No. 25-cv-04174-RS, 2025 WL 2337124, at *4 (N.D. Cal. Aug. 12, 2025).

## III. CONCLUSION

For the foregoing reasons, and those set forth in Defendant's Motion, Defendants respectfully request that the Court transfer the case to the Southern District of New York or, in the alternative, dismiss Plaintiffs' Complaint and grant such other and further relief as is just and proper.

Dated: September 5, 2025

COZEN O'CONNOR

By: */s/ Matthew E. Lewitz*
Matthew E. Lewitz
Erin Bolan Hines
Attorneys for Defendants
MPARTICLE, INC. and ROKT US CORP.

[4] While Plaintiffs view *Lineberry* as inapposite because Plaintiffs have alleged the existence of a general market for website visitor data, *Lineberry* reinforces that Plaintiffs' lack of allegations about "how or why" they "suffer an economic loss every time their data is used and shared" and "whether [they] can still sell their data if [Defendants] already ha[ve] it" is fatal to their CDAFA claim. *Lineberry*, 2025 WL 551864, at *2.



COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401